## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| GRIFFITTS & CODER CUSTOM CHOPPING, LLC, | ) | |
| BRADLEY A. GRIFFITTS, and | ) | |
| TIMOTHY L. CODER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-02300 |
| | ) | |
| CNH INDUSTRIAL AMERICA LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————————— | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Defendant CNH Industrial America LLC ("Defendant" or "CNH") respectfully submits this Memorandum in Support of its Motion for Summary Judgment. The plaintiffs in this case are Griffitts & Coder Custom Chopping, LLC ("Custom Chopping"), Bradley A. Griffitts ("Brad Griffitts"), and Timothy L. Coder ("Tim Coder") (each individually "Plaintiff" and collectively "Plaintiffs"). Plaintiffs assert claims against CNH related to alleged GPS and mechanical issues on five New Holland tractors leased by Custom Chopping. CNH's summary judgment motion should be granted because there are no genuine issues of material fact and CNH is entitled to judgment as a matter of law on each of Plaintiffs' claims in this lawsuit.

Brad Griffitts and Tim Coder each individually assert claims against CNH for violations of the Kansas Consumer Protection Act ("KCPA") based on alleged unconscionable and deceptive acts and practices by CNH related to the tractors (Counts 3 and 4). These claims fail as a matter of law because no Plaintiffs are a "consumer" and the sales and leases of the Tractors are not "consumer transactions" under the KCPA.[1]

---

[1] CNH expressly reserves and does not waive its request for reasonable attorney fees based on Plaintiffs' knowingly groundless KCPA claims. *See* K.S.A. § 50-634(e); PTO, Dkt. #50, p.15, ¶5.

151944002.4

All Plaintiffs assert a claim against CNH for breach of the implied warranty of merchantability (Count 2). This claim fails as a matter of law, as all implied warranties were disclaimed by CNH's express warranty that was signed by Custom Chopping for each tractor.

All Plaintiffs also assert a claim against CNH for breach of express warranty (Count 1), which fails as a matter of law. CNH's express warranty, which was signed by Custom Chopping, provides the exclusive remedy of paying for parts and labor costs for the repair, by an authorized dealer, of any defect in material or workmanship that is found and reported during the warranty period. Plaintiffs have not alleged that CNH failed to pay, or that Plaintiffs were required to pay, for parts or labor costs by an authorized dealer for the repair of an alleged defect in the tractors. The alleged damages claimed by Plaintiffs – reimbursement of lease payments – are not allowed under the exclusive remedy in the express warranty. But if the exclusive remedy is ignored, then Plaintiffs' claim still fails because Plaintiffs have offered no admissible evidence (*i.e.*, expert testimony) to establish damages available under the UCC for breach of warranty.

Additionally, although unnecessary if summary judgment is granted in full on the issues above, certain other aspects of Plaintiffs' claims also fail as a matter of law. For one, the undisputed facts establish that CNH has no obligations under, and is not liable to Plaintiffs for, any purported oral extended warranty allegedly agreed to by Agri-Center related to the tractors, as CNH was not a party to that alleged agreement and CNH's express warranty disclaims it. Moreover, Plaintiffs are precluded from asserting claims or seeking damages related to alleged problems encountered by third party G&C Farm Services LLC ("Farm Services") during its use, attempted use, or desired use of the tractors. Farm Services (i) has no privity with CNH; (ii) had no agreement with Custom Chopping; (iii) made no payments to Custom Chopping for the use of the tractors; and (iv) was not even allowed under the Lease Agreements to operate the tractors.

2

For these reasons, which are set out in greater detail below, CNH respectfully requests that the Court grant summary judgment in its favor on Plaintiffs' claims in this lawsuit.

## I.     <u>INTRODUCTION</u>[2]

In 2016, Custom Chopping entered into five lease agreements for the lease of five New Holland tractors – Serial Numbers ZFRE05239, ZFRE06025, ZFRE02091, ZGRE02009, and ZGRE02010 (collectively, "Tractors") – from Farm Credit Leasing Services Corporation d/b/a Ag Direct ("Farm Credit Leasing").  As part of this transaction, Custom Chopping met with F&W Tractor Co., Inc. d/b/a AgriCenter ("Agri-Center"), an authorized dealer of New Holland agricultural equipment, to identify five New Holland tractors it wished to lease.  Agri-Center sold the Tractors to Farm Credit Leasing and Farm Credit Leasing then leased the Tractors back to Custom Chopping.  Custom Chopping signed a separate CNH Warranty and Limitation of Liability Agreement ("WLL") for each Tractor, which set out the warranty terms that governed the Tractors.

In mid-2016, CNH was advised by Agri-Center that when the Tractors spread manure in a circular center-pivot pattern using a manure-spreading implement, the GPS and precision farming system in the Tractors would "crash" and lose the programmed line after approximately two to three hours of use and require the Tractors to be turned off and back on to allow the GPS receiver to reconnect in order to relocate the programmed line.  CNH worked with Agri-Center on investigating and resolving the GPS issue.  During late 2016, CNH stopped receiving any communication from Agri-Center regarding GPS issue, so CNH believed the issue was resolved.

Then, in December 2017, Agri-Center and Custom Chopping advised CNH that the GPS issue was never fixed and demanded that it be fixed immediately.  CNH began working with Agri-

---

[2] This Introduction provides context and reflects CNH's position in the case, but CNH relies only on facts in the Statement of Uncontroverted Facts below for its summary judgment arguments.

Center and CNH's GPS vendor, Trimble, Inc. ("Trimble"), on diagnosing, fixing, and validating the GPS issue encountered on the Tractors. Notably, no other users ever complained about this particular GPS and precision farming issue, so CNH and Trimble had to start from scratch in the investigation. Also, given that the GPS software was developed by Trimble, CNH had to wait for Trimble to diagnose the root cause and develop a fix for the issue before it could test the fix and validate that it did not inadvertently cause any other problems with the equipment.

After significant testing, Trimble was able to replicate the GPS issue identified by Custom Chopping on another tractor in a test field. Trimble then developed "patch software" that was installed on the Tractors, which detected when the GPS software was about to crash and reset the NAV controller before the crash occurred without affecting the GPS receiver, resulting in a delay of only a few seconds to allow the NAV controller to reset before relocating the programmed line. Trimble eventually identified the root cause of the GPS issue and developed what it believed was the solution to the issue. CNH tested the software solution to validate it and confirm that it did not inadvertently cause any other problems with the software or other systems on the equipment. The permanent GPS software solution was installed on the Tractors in late January 2019 and, to CNH's knowledge, the GPS on the Tractors have functioned properly since that time.

Custom Chopping also alleges that the Tractors suffered a high number of mechanical failures. However, certain mechanical failures on the Tractors were caused by operator abuse, negligence, or misuse. Moreover, CNH complied with the two-year express warranty in the WLL by paying for parts and labor costs by authorized dealers to repair the mechanical failures on the Tractors. At this time, there are no known mechanical failures on the Tractors. Also, although not contractually required, Custom Chopping was provided with a loaner tractor when any Tractors went down with a mechanical issue, and at certain times since 2016, Custom

4

Chopping had access to a loaner tractor even when all five Tractors were operational.

The leases on two Tractors expired in early February 2019 and Custom Chopping returned those Tractors to Farm Credit Leasing. The leases on two more of the Tractors expired in late April 2019 and Custom Chopping returned them to Farm Credit Leasing. The lease on the fifth Tractor expires in late September 2019 so it is still in Custom Chopping's possession.

## II.   STATEMENT OF UNCONTROVERTED FACTS

The following separately-numbered Statement of Uncontroverted Facts ("SOUF") set out the material facts for which no genuine issue exist in the above-captioned case.

1.     Custom Chopping is a Kansas limited liability company that was formed in approximately 2012. Exhibit A, Coder Depo. at 26:21-25; *see also* Pretrial Order, Dkt. #50, p. 2, ¶ 2(a)(1).

2.     The only two members of Custom Chopping are Brad Griffitts and Tim Coder. Exhibit A, Coder Depo. at 203:18-22; Exhibit B, Griffitts Depo. at 17:4-7.

3.     Farm Services is a Kansas limited liability company that was formed in 2015. Exhibit A, Coder Depo. at 29:24-30:6.

4.     The only two members of Farm Services are Brad Griffitts and Tim Coder. Exhibit A, Coder Depo. at 203:23-25; Exhibit B, Griffitts Depo. at 17:8-13.

5.     Brad Griffitts and Tim Coder are not related to each other. Exhibit B, Griffitts Depo. at 11:21-22

6.     Neither Brad Griffitts nor Tim Coder own or operate a farming operation, whether as an individual, sole proprietorship, or with other family members, but Custom Chopping owns 335 acres of ground near Muleshoe, Texas where Custom Chopping raises crops, including wheat and corn, for sale. Exhibit A, Coder Depo. at 29:16-31:12, 32:25-33:10; Exhibit B, Griffitts Depo. at 11:5-6, 22:20-24:11.

7.      Custom Chopping performs three primary services: (a) custom silage harvesting, which involves swathing, chopping, hauling, piling, and packing a particular crop; (b) custom swathing and hauling of straw; and (c) occasional trucking for other custom cutters and farmers. Exhibit A, Coder Depo. at 35:18-45:16, 58:19-59:15, and 158:15-21.

8.      The only service performed by Farm Services is manure spreading.  Exhibit A, Coder Depo. at 30:7-10, 46:14-47:1, 48:17-24, 50:20-51:12, 97:11-98:2, and 158:15-21; Exhibit B, Griffitts Depo. at 30:5-11.

9.      Custom Chopping's season for custom silage harvesting runs from March to November.  Exhibit A, Coder Depo. at 36:17-24.

10.     Farm Services' season for manure spreading runs from September to April. Exhibit A, Coder Depo. at 50:20-25.

11.     Custom Chopping's season for straw swathing is in the middle of the summer. Exhibit A, Coder Depo. at 44:19-24.

12.     Farm Services last spread manure in December 2018 or January 2019 and is in the process of liquidating and closing the business because manure spreading is no longer lucrative due to increased competition charging lower rates.  Exhibit A, Coder Depo. 53:14-55:17, 74:12-20, and 190:21-191:4.

13.     From January to May 2016, Custom Chopping entered into leases for five New Holland tractors from Farm Credit Leasing which were sold by Agri-Center.  Exhibit A, Coder Depo. 120:9-125:12.

14.     A Commercial Equipment Lease Agreement ("Lease Agreement") with Farm Credit Leasing was entered into for the lease of each of the five Tractors:

    a.  2016 New Holland T8.380 Auto Command Tractor, Serial Number
        ZFRE05239, dated January 28, 2016;

<ol type="a" start="2">
<li>2016 New Holland T8.380 Auto Command Tractor, Serial Number ZFRE06025, dated January 28, 2016;</li>
<li>2015 New Holland T8.435 Auto Command Tractor, Serial Number ZFRE02091, dated March 21, 2016;</li>
<li>2016 New Holland T8.380 Powershift Tractor, Serial Number ZGRE02009, dated April 29, 2016; and</li>
<li>2016 New Holland T8.380 Powershift Tractor, Serial Number ZGRE02010, dated April 29, 2016.</li>
</ol>

Exhibit A, Coder Depo. 120:9-125:12; Exhibit D, Depo. Ex. #23; Exhibit E, Depo. Ex. #24;

Exhibit F, Depo. Ex. #25; Exhibit G, Depo. Ex. #26; Exhibit H, Depo. Ex. #27.

15.    Each Lease Agreement above was between Farm Credit Leasing as "Lessor" and

"Griffitts & Coder Custom Shopping LLC, Timothy L Coder, Bradley Allen Griffitts ('Lessee')

a(n) Kansas LLC" as "Lessee."  Exhibit A, Coder Depo. 120:9-125:12; Exhibit D, Depo. Ex.

#23; Exhibit E, Depo. Ex. #24; Exhibit F, Depo. Ex. #25; Exhibit G, Depo. Ex. #26; Exhibit H,

Depo. Ex. #27.

16.    Paragraph 6 of each Lease Agreement states:

- Use, Maintenance and Return of Equipment; Subletting and Assignment Prohibited.  Lessee agrees that the Equipment will only be used in the Lessee's trade or business for legal business and commercial purposes.  Without Lessor's prior written consent, Lessee shall not (a) sublet the Equipment, (b) assign, transfer or otherwise dispose of this Lease, any Equipment or any interest therein, or create or suffer any levy, lien or encumbrances thereon other than any lien or encumbrances created by Lessor, or (c) remove the Equipment from the Equipment Location specified above.  The Equipment will be operated by competent and qualified personnel only and in accordance with applicable operating instructions, laws, government regulations and applicable insurance policies. . . .

Exhibit A, Coder Depo. 120:9-125:12; Exhibit D, Depo. Ex. #23; Exhibit E, Depo. Ex. #24;

Exhibit F, Depo. Ex. #25; Exhibit G, Depo. Ex. #26; Exhibit H, Depo. Ex. #27.

17.    Paragraph 9 of each Lease Agreement states:

- Warranties. Lessee agrees that it has selected the Equipment and Vendor based upon its own judgment and disclaims any reliance upon any statements or representations made by Lessor. LESSEE ACKNOWLEDGES THAT: LESSOR IS NOT THE MANUFACTURER OF THE EQUIPMENT NOR THE MANUFACTURER'S AGENT NOR A DEALER THEREIN; THE EQUIPMENT IS OF THE SIZE, DESIGN, CAPACITY, DESCRIPTION, AND MANUFACTURE SELECTED BY LESSEE; LESSEE IS SATISFIED THAT THE EQUIPMENT IS SUITABLE AND FIT FOR ITS PURPOSES; LESSOR HAS NOT MADE AND DOES NOT MAKE NAY WARRANTY EITHER EXPRESS OR IMPLIED AND HAS NOT WARRANTED THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; AND LESSEE LEASES THE EQUIPMENT AND TAKES SUCH "AS IS" AND WITH ALL FAULTS. Lessor hereby assigns to Lessee, for the duration hereof, all warranties received by Lessor with respect to the Equipment to the extent assignable and Lessor shall have no obligation whatsoever to make any claim on such warranty.

Exhibit A, Coder Depo. 120:9-125:12; Exhibit D, Depo. Ex. #23; Exhibit E, Depo. Ex. #24; Exhibit F, Depo. Ex. #25; Exhibit G, Depo. Ex. #26; Exhibit H, Depo. Ex. #27.

18. At no time from January to May 2016 did Tim Coder or Brad Griffitts ever communicate with Farm Credit Leasing regarding the Tractors or the Lease Agreements, as all such communication with Farm Credit Leasing went through Lee File of Agri-Center. Exhibit A, Coder Depo. 106:23-107:7, 116:11-117:12, 125:13-23, 134:21-135:1; *see* Exhibit C, Lee File Affidavit at ¶ 13.

19. Neither Tim Coder nor Brad Griffitts ever requested that they be identified as additional lessees in the Lease Agreements, as Lee File at Agri-Center advised them that Farm Credit Leasing required them to be named as additional lessees because the lease was with Custom Chopping, not an individual. Exhibit A, Coder Depo. 145:11-146:14; Exhibit C, Lee File Affidavit at ¶¶ 18-19 and 21.

20. Custom Chopping has always intended to return the Tractors at the end of the lease term, not to pay the "End of Term Amount" under the Lease Agreements to purchase the

Tractors from Farm Credit at the end of the least term.  Exhibit A, Coder Depo. 100:5-101:11.

21.     Lee File at Agri-Center emailed Brad Griffitts and Tim Coder each unsigned Lease Agreement, which Brad Griffitts and Tim Coder reviewed, signed, and emailed back to Mr. File without making any revisions to any Lease Agreement.  Exhibit A, Coder Depo. 131:2-134:20 and 135:7-23; Exhibit C, Lee File Affidavit at ¶¶ 22-24.

22.     Agri-Center's two Bills of Sale documenting the transactions involving the Tractors identified "Griffitts & Coder Custom Chopping LLC" as "Buyer" and "Brad Griffitts & Tim Coder" as "Co-Buyer."  Exhibit A, Coder Depo. 109:2-110:23 and 117:22-118:14; Exhibit I, Depo. Ex. #22; Exhibit C, Lee File Affidavit at ¶¶ 16-17.

23.     Neither Tim Coder nor Brad Griffitts ever requested that they be identified as "Co-Buyer" in the Bills of Sale, as Lee File at Agri-Center advised them that Farm Credit Leasing required them to be named as "Co-Buyer" because the leases of the Tractors were with Custom Chopping, not an individual.  Exhibit A, Coder Depo. 146:15-147:4; Exhibit C, Lee File Affidavit at ¶¶ 18-19.

24.     Farm Services was not identified as a "Buyer" or "Co-Buyer" on the Bills of Sale or as a "Lessee" in the Lease Agreements because it did not have an established credit rating like Custom Chopping.  Exhibit A, Coder Depo. 147:5-22.

25.     Lee File of Agri-Center believed that Farm Credit Leasing required the individual business owners (in this case, Brad Griffitts and Tim Coder) to be identified on sale documents as co-buyers and lease documents as additional lessees when the equipment at issue was leased to an entity as opposed to an individual, such that the business owners essentially act as guarantors for the sale and lease if the entity cannot make the payments.  Exhibit C, Lee File Affidavit at ¶¶ 18 and 21.

9

26.     Agri-Center considers its "customer" with respect to the sale and lease of the Tractors to be Custom Chopping, not Brad Griffitts or Tim Coder individually. Exhibit C, Lee File Affidavit at ¶ 20.

27.     All payments under the Lease Agreements were made by Custom Chopping, not by Brad Griffitts and/or Tim Coder individually. Exhibit A, Coder Depo. 145:5-10, 159:3-7.

28.     Plaintiffs allege that as part of the agreement to lease the Tractors through a sale from Agri-Center, Plaintiffs required, and Lee File of Agri-Center agreed, to provide an extended warranty to match the warranty provided by Fendt, a CNH competitor. Exhibit A, Coder Depo. at 107:8-108:20, 112:25-113:20, 114:8-116:2, and 183:4-184:17.

29.     Plaintiffs claim that this purported extended warranty was for the life of each lease, and that Agri-Center agreed to (1) perform all fluid and filter changes on the Tractors; (2) perform all mechanical repairs on the Tractors; and (3) provide a loaner tractor to Plaintiffs if one of Plaintiffs' Tractors went down and could not be repaired within 24 hours. Exhibit A, Coder Depo. at 107:8-108:20, 113:21-114:7, 119:7-120:6, and 127:8-128:23.

30.      Plaintiffs acknowledge that the only writing that references this purported additional warranty is the two Agri-Center Bills of Sale, which mention an extended warranty with Agri-Center performing all fluid changes during the extended warranty term, as the purported extended warranty was "all agreed to verbally." Exhibit A, Coder Depo. at 110:5-111:23; Exhibit I, Coder Depo. Ex. 22.

31.     Plaintiffs also acknowledge that they never had any discussions or email exchanges with CNH about the purported extended warranty and that they did not enter into a written agreement with CNH about the purported extended warranty. Exhibit A, Coder Depo. at 113:5-20 and 118:15-119:6.

151944002.4

32.     Plaintiffs also have no knowledge of whether Farm Credit Leasing was ever advised of the purported extended warranty.  Exhibit A, Coder Depo. at 135:24-136:2.

33.     A separate New Holland Warranty and Limitation of Liability Agreement ("WLL") was signed by Brad Griffitts, identifying the "Purchaser Name" as "Griffitts & Coder Custom Chopping LLC," for each of the five Tractors as follows:

   a.  2016 New Holland T8.380 Auto Command Tractor, Serial Number ZFRE05239, signed February 5, 2016;

   b.  2016 New Holland T8.380 Auto Command Tractor, Serial Number ZFRE06025, signed February 5, 2016;

   c.  2015 New Holland T8.435 Auto Command Tractor, Serial Number ZFRE02091, signed March 24, 2016;

   d.  2016 New Holland T8.380 Powershift Tractor, Serial Number ZGRE02009, signed May 3, 2016; and

   e.  2016 New Holland T8.380 Powershift Tractor, Serial Number ZGRE02010, signed May 3, 2016.

Exhibit A, Coder Depo. 151:24-156:13; Exhibit J, Depo. Ex. #33; Exhibit K, Depo. Ex. #34; Exhibit L, Depo. Ex. #35; Exhibit M, Depo. Ex. #36; Exhibit N, Depo. Ex. #37; Exhibit B, Griffitts Depo. 27:23-28:24; Exhibit C, Lee File Affidavit at ¶ 25.

34.     Each WLL contained the following excerpts:

   •  The NHAG Warranty is a limited warranty that is provided to the initial retail purchaser in return for consideration paid as part of the purchase price of the product. The selling dealer must review the warranty coverage with the initial retail purchaser and obtain signature on this document.

   •  The warranty described here is from CNH Industrial America LLC . . . referred to in this agreement as "NHAG".

   •  For the products listed below, the Warranty Period for all coverage begins at the time that any person, dealer or agent first places the unit into service. At the latest, a unit is considered to be placed into service when purchased or delivered to an initial retail purchaser.

151944002.4

- PRODUCT: . . . All Agricultural Tractors except Compact Tractors . . . 24 Months / 2000 Hours

- If a defect in material or workmanship is found in a unit and reported during the Warranty Period, NHAG will pay parts and labor costs to repair the defect if the services are performed by an authorized NHAG dealer at the dealer's location.

- NHAG PROVIDES NO WARRANTY, EXPRESS OR IMPLIED, FOR A COMPONENT OR OTHER ITEM THAT IS SEPARATELY WARRANTED TO THE PURCHASER BY ITS MANUFACTURER . . . .

- The NHAG Warranty is limited to the written terms in this document. . . .

- EXCLUSIVE REMEDY: THE REMEDY OF REPAIRING A DEFECT IN MATERIALS OR WORKMANSHIP AT A NHAG DEALERSHIP UNDER THE TERMS OF THIS WARRANTY IS THE PURCHASER'S EXCLUSIVE REMEDY AND IS IN LIEU OF ANY OTHER REMEDY OTHERWISE AVAILABLE.

- THIS DOCUMENT CONTAINS THE ENTIRE NHAG WARRANTY. NHAG MAKES NO OTHER REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, AND SPECIFICALLY EXCLUDES THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.* NHAG WILL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE WRITTEN WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.*

- The NHAG warranty remains in effect during the Warranty Period if the owner performs the required maintenance at the recommended intervals outlined in the product operator's manual and the unit is operated within its rated capacity.

- What's Not Covered: . . .

  - Repairs arising from storage deterioration, failure to maintain the equipment, negligence, alteration, improper use of the equipment, collision or other accident, vandalism, or other casualty, or operation beyond rated capacity or specification.

  - Repairs arising from abuse or neglect, including but not limited to: operation without adequate coolant or lubricants, adjustments to the fuel system outside equipment specifications, over-speeding,

> improper storage, starting, warm-up, or shutdown practices,
> incorrect fuel or contaminated fuel, oil or other fluids. . . .

> ▪ Economic loss including lost profits, crop loss, equipment rental,
> or other expense. . . .

Exhibit A, Coder Depo. 151:24-156:13; Exhibit J, Depo. Ex. #33; Exhibit K, Depo. Ex. #34;

Exhibit L, Depo. Ex. #35; Exhibit M, Depo. Ex. #36; Exhibit N, Depo. Ex. #37; Exhibit B,

Griffitts Depo. 27:23-28:24.

35.     Lee File from Agri-Center reviewed the WLL with Brad Griffitts in early

February 2016 before Brad Griffitts signed the first two WLLs.  Exhibit C, Lee File Affidavit at

¶ 26.

36.     All payments for all other non-lease expenses for the Tractors were paid by

Custom Chopping, not by Brad Griffitts and/or Tim Coder individually.  Exhibit A, Coder Depo.

159:8-13

37.     All payments for work in which the Tractors were used were paid to Custom

Chopping or Farm Services, not to Brad Griffitts and/or Tim Coder individually.  Exhibit A,

Coder Depo. 159:14-20.

38.     Any contracts (which were all oral) for work in which the Tractors were used

were made with Custom Chopping or Farm Services, not with Brad Griffitts and/or Tim Coder

individually.  Exhibit A, Coder Depo. 159:21-160:5.

39.     Custom Chopping included the lease expenses for the Tractors in its tax returns,

but neither Brad Griffitts nor Tim Coder claimed any amounts related to the Tractors in their

individual tax returns.  Exhibit A, Coder Depo. 160:6-24.

40.     Farm Services never made any documented payments to Custom Chopping for

use of the Tractors and Farm Services had no contracts or other agreements with Custom

Chopping.  Exhibit A, Coder Depo. 147:23-148:2, 204:1-4.

41.     Custom Chopping executed Agricultural Exemption Certificates with the Kansas Department of Revenue for each of the five Tractors which identified the "Purchaser" as "Griffitts and Coder Custom Chopping LLC".  Exhibit A, Coder Depo. at 156:15-157:13; Exhibit O, Depo. Ex. #38.

42.     The Tractors have only been used for (a) spreading manure for Farm Services; (b) swathing and hauling silage and equipment for Custom Chopping; and (c) mowing and maintenance of (i) the house near Muleshoe, Texas that is owned by Custom Chopping and used as its Texas office and as lodging for Brad Griffitts, Tim Coder, and other employees during the season and (ii) the camp site near Muleshoe, Texas that Custom Chopping rents from a local dairy to store equipment and as lodging for other employees during the season.  Exhibit A, Coder Depo. 138:11-145:4.

43.     Plaintiffs' claims in this case relate to alleged GPS and mechanical issues with the Tractors.  Exhibit A, Coder Depo. at 205:3-7.

44.     Plaintiffs claim that when a Tractor was used to spread manure in a circular center pivot pattern using their manure spreading implement, the GPS on the Tractor would "crash" and lose the programmed line after approximately two to three hours of use and require the Tractor to be turned off and back on to allow the GPS receiver to reconnect in order to find the programmed line again.  Exhibit A, Coder Depo. at 163:6-164:3; Exhibit B, Griffitts Depo. at 31:1-7 and 42:5-45:2.

45.     Plaintiffs acknowledge that when a Tractor was used for swathing in a circular center pivot pattern, the GPS "crash" occurred sporadically and much less frequently than during manure spreading, where sometimes it would "crash" two or three times in a day and some days not at all.  Exhibit A, Coder Depo. at 65:3-19, 67:4-7, and 163:6-164:3.

151944002.4

46.     A permanent software fix for the GPS issue identified by Custom Chopping was installed on the Tractors sometime between January 29, 2019 and February 2, 2019. Exhibit P, Eric Lind Affidavit, ¶ 10.

47.     The permanent software fix successfully resolved the GPS issues previously reported by Custom Chopping. Exhibit P, Eric Lind Affidavit, ¶ 11.

48.     Custom Chopping has not reported any further GPS issues with any of the Tractors since the permanent software fix was installed on their tractors. Exhibit P, Eric Lind Affidavit, ¶ 12; Exhibit B, Griffitts Depo. at 55:17-22.

49.     Custom Chopping also reported various mechanical issues with the Tractors. Exhibit P, Eric Lind Affidavit, ¶ 13.

50.     There are no existing mechanical issues with any of the Tractors, as all such prior alleged mechanical issues with the Tractors were successfully repaired by a CNH authorized dealer. Exhibit P, Eric Lind Affidavit, ¶ 13.

51.     In this case, all three Plaintiffs assert claims against CNH for breach of express warranty and breach of the implied warranty of merchantability, and Brad Griffitts and Tim Coder individually assert two claims against CNH under the KCPA for alleged unconscionable and deceptive acts and practices. Dkt. #1-1; Dkt. #50, pp. 10-12, ¶ 4(a).

52.     Plaintiffs' deadline under the Scheduling Order to identify and disclose any expert witnesses under Fed. R. Civ. P. 26(a)(2) was January 2, 2019, but to date, Plaintiffs have not identified any expert witness in this case. Dkt. #16, p. 3, ¶ (2)(c); *see generally* Docket.

53.     Plaintiffs request damages against CNH for (1) the total of the lease payments for the Tractors of $791,140.27; (2) civil penalties under the KCPA in the amount of $100,000 ($10,000 per Tractor for each individual Plaintiff); and (3) attorney's fees under the KCPA. Dkt.

151944002.4

#50, pp. 14-15, ¶ 5.

54. Plaintiffs have not alleged in this case that CNH failed to pay, or Plaintiffs were required to pay, for parts or labor costs for defects in the Tractors to be repaired by a CNH authorized dealer. *See generally* Dkt. #1-1; Dkt. #50.

## II.    ARGUMENT AND AUTHORITIES

For the reasons explained below, there are no genuine issues of material fact and CNH is entitled to judgment as a matter of law on each of Plaintiffs' claims in this lawsuit.

### A.    Summary Judgment Standards.

Summary judgment is appropriate if the moving party demonstrates there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *See Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). If the movant carries this initial burden, the non-movant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant. *Id.* (citing Fed. R. Civ. P. 56(e)). These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000). The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment. *Id.*

Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and

shall set forth such facts as would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* at 794.

**B.** **Plaintiffs' KCPA claims fail because no Plaintiffs are a "consumer" and the sales and leases of the Tractors are not a "consumer transaction" under the KCPA.**

The KCPA is construed liberally "to protect *consumers* from suppliers who commit deceptive and unconscionable practices" and "to protect *consumers* from unbargained for warranty disclaimers[.]" K.S.A. § 50-623(b) and (c) (*emphasis added*). The KCPA includes the following definitions:

- "'Consumer transaction' means a sale, lease, assignment or other disposition for value of property . . . within this state . . . *to a consumer*[.]" K.S.A. § 50-624(c) (*emphasis added*).

- "'Consumer' means an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property . . . for personal, family, household, business, or agricultural purposes." K.S.A. § 50-624(b).

The KCPA holds that "[n]o supplier shall engage in any deceptive act or practice in connection with a *consumer transaction*." K.S.A. § 50-626(a) (*emphasis added*). The KCPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a *consumer transaction*." K.S.A. § 50-627(a) (*consumer transaction*).

Custom Chopping is not asserting a KCPA claim in this case, but in any event, it is not a "consumer" under the KCPA because it is not "an individual, husband and wife, sole proprietor, or family partnership[.]" K.S.A. § 50-624(b); *Wayman v. Amoco Oil Co.*, 923 F.Supp. 1322, 1363 (D. Kan. 1996); *see* SOUF #1-#2, #5. Brad Griffitts and Tim Coder are not "consumers"

under the KCPA either. Although Mr. Griffitts and Mr. Coder are individuals, the undisputed

facts show that they made no payments (either lease payments to Farm Credit Leasing or for any

other expenses) related to the Tractors and took no tax treatment for the Tractors, and the

Tractors were not used for their own individual purposes. SOUF #27, #36, #39, #42. Rather,

Custom Chopping made all payments related to the Tractors and claimed expenses related to the

Tractors on its taxes, and the Tractors were only used by Custom Chopping and Farm Services.

SOUF #27, #36, #39, #42. Additionally, the undisputed facts show that Mr. Griffitts and Mr.

Coder did not request to be identified as "Co-Buyers" or additional lessees on the sale and lease

paperwork for the Tractors, but instead were so identified because Lee File of Agri-Center

thought that was required by Farm Credit Leasing when equipment was leased to an entity as

opposed to an individual. SOUF #19, #23, #25. Moreover, the WLL for each Tractor was

signed on behalf of Custom Chopping as "Purchaser Name." SOUF #33.

Based on these undisputed facts, with no involvement other than signing their names as

"Co-Buyers" and additional lessees on the sale and lease paperwork, the only logical conclusion

is that Mr. Griffitts and Mr. Coder acted as guarantors for the sales and leases of the Tractors

who would be liable if Custom Chopping ever failed to make a lease payment to Farm Credit

Leasing. However, the case of *CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc.*, 29

Kan. App. 2d 676, 685, 32 P.3d 1197, 1204 (2001), makes clear that "[t]he KCPA's protection . .

. is not extended to individuals who promise performance of a corporation contracting with a

supplier." Therefore, Brad Griffitts and Tim Coder are not "consumers" under the KCPA, which

precludes the sales and leases of the Tractors from being a "consumer transaction" under the

KCPA. For these reasons, the KCPA does not apply to the circumstances in this case and

Plaintiffs' KCPA claims fail as a matter of law.

18

### C. Plaintiffs' breach of implied warranty of merchantability claim fails because all implied warranties were disclaimed by the WLL.

The WLL that Custom Chopping signed for each Tractor specifically states, among other things, that: (i) the WLL contains CNH's entire warranty on the Tractors; (ii) CNH makes no other representations or warranties, expressed or implied, other than what is identified in the WLL; (iii) CNH specifically excludes the implied warranties of merchantability and fitness for a particular purpose; and (iv) CNH will not be liable for any incidental or consequential damages resulting from an alleged breach of any implied warranty imposed by law. SOUF #33-#34.

The warranty that goods are merchantable is implied in a contract for sale if the seller is a merchant of those goods of that kind. K.S.A. § 84-2-314(1). However, the implied warranty of merchantability may be excluded or modified if the contract language mentions merchantability and is conspicuous. K.S.A. § 84-2-316(2). All implied warranties are excluded by expressions like "as is," "with all faults," and other language that calls the buyer's attention to the exclusion of warranties and makes clear that there is no implied warranty. K.S.A. § 84-2-316(3)(a).

The KCPA does not apply to the circumstances of this case as explained in Section (II)(B) above, so the WLL's exclusion of any implied warranties is not forbidden by the KCPA. *See Farrell v. General Motors Corp.*, 249 Kan. 231, Syl. ¶ 3, 815 P.2d 538, 545 (1991); *J&W Equipment, Inc. v. Weingartner*, 5 Kan.App.2d 466, 468-471, 618 P.2d 862, 864-866 (1980). The WLL specifically states that CNH does not make any implied warranties and specifically excludes the implied warranty of merchantability. SOUF #34. Under the Kansas UCC, this implied warranty exclusion is valid because the contract language (i) mentions merchantability, (ii) is conspicuous, (iii) calls the buyer's attention to the exclusion of warranties, and (iv) makes clear that there is no implied warranty. K.S.A. § 84-2-316(2), (3)(a). Because the WLL validly excludes any implied warranty of merchantability, Plaintiffs' claim for breach of the implied

19

warranty of merchantability fails as a matter of law.

      **D.**    **Plaintiffs' breach of express warranty claim fails because the WLL provides the exclusive remedy that precludes money damages and Plaintiffs' have no admissible evidence to establish money damages due to their failure to identify or disclose an expert witness.**

The WLL that Custom Chopping signed for each Tractor specifically states, among other things, that: (i) if a defect in material or workmanship is found and reported during the warranty period (2 years or 2,000 engine hours), CNH will pay for parts and labor costs by an authorized dealer to repair the defect at the dealer's location; (ii) CNH's warranty is limited to the written terms in the WLL, which contains the entire CNH warranty; (iii) the repair remedy identified above is the "exclusive remedy" and is in lieu of any other remedy otherwise available; (iv) CNH makes no other representations, expressed or implied; and (v) CNH is not liable for incidental or consequential damages resulting from an alleged breach of written warranty. SOUF #33-#34.

The Kansas UCC provides that the agreement between the buyer and seller may provide for remedies in substitution for those provided in the Kansas UCC and may limit or alter the measure of damages recovered under the Kansas UCC, including limiting the buyer's remedies to repair and replacement of the non-conforming goods or parts. K.S.A. § 84-2-719(1)(a). If the remedy provided in the agreement is expressly agreed to be exclusive, it is the sole remedy. K.S.A. § 84-2-719(1)(b). In this case, Plaintiffs' exclusive remedy under the WLL was for CNH to pay for parts and labor costs by an authorized dealer to repair a defect in material or workmanship at the dealer's location, if the defect is reported during the warranty period. SOUF #34. The WLL also waives any right to incidental or consequential damages. SOUF #34. Plaintiffs have not alleged that CNH failed to pay, or Plaintiffs were required to pay, for parts or labor costs by an authorized dealer for the repair of an alleged defect in the Tractors. SOUF #54. Plaintiffs are precluded as a matter of law from seeking the repayment of lease payments made

20

by Custom Chopping to Farm Credit Leasing, as such money damages are not allowed under the exclusive remedy in the WLL.  Thus, Plaintiffs' breach of express warranty claim fails.

Plaintiffs argue that the circumstances in this case cause the WLL's exclusive remedy to fail of its essential purpose, such that other remedies from the Kansas UCC may be provided under K.S.A. § 84-2-719.  If Plaintiffs are correct on this point (which they are not), then the measure of damages for breach of warranty provided under the UCC is the difference at the time and place of acceptance between (i) the value of the goods accepted and (ii) the value they would have been if they had been as warranted.  K.S.A. § 84-2-714(2).  One element a plaintiff must prove for a breach of express warranty claim is the loss that resulted from the breach.  *Chapman v. Kansas Basement & Found. Repair, Inc.*, 210 P.3d 137, 2009 WL 1911750, *4 (Kan. Ct. App. July 2, 2009).  Even if the Court accepts Plaintiffs legal argument on the WLL's exclusive remedy, Plaintiffs' breach of express warranty claim still fails.  Expert testimony is required to establish the difference in value damages caused by an alleged breach by CNH.  Because Plaintiffs failed to identify or disclose any expert witness in this case, Plaintiffs' have no admissible evidence of damages caused as a result of any such breach by CNH.  *See* SOUF #42.

There is no fixed or general rule that requires expert testimony.  *Genesis Health Clubs, Inc. v. Led Solar & Light Co.*, No. 13-1269-JWL, 2014 WL 1246768, at *6 (D. Kan. Mar. 26, 2014).  Expert testimony is required only if a lay factfinder lacks the competency and is not equipped by common knowledge and skill to draw proper conclusions concerning the issue at hand.  *Id.*  Kansas courts have held that not every claim for breach of express warranty requires expert testimony, but expert testimony is required when the facts involve such technical complexities that they exceed the experience and understanding of the average layman, such that without the aid of expert testimony, a reasonable trier of fact could not determine an element of a

21

plaintiff's claim. *Robison Farms, Inc. v. ADM All. Nutrition, Inc.*, No. 05-4089-KGS, 2007 WL 2875132, at *19 (D. Kan. Sept. 29, 2007).

Evidence regarding the value of the Tractors leased, which according to Plaintiffs had a defective GPS system and extensive mechanical defects, requires expert testimony because it involves technical complexities that they exceed the experience and understanding of the average layman. *Id.* An average layman does not know anything about the market for or value of tractors (whether purchased or leased), much less the value of tractors with certain alleged GPS and mechanical defects. Therefore, a reasonable trier of fact could not determine an element of Plaintiffs' breach of express warranty claim (damages) without the aid of expert testimony. *Id.*

Because Plaintiffs failed to identify or disclose any expert witness in this case (SOUF #42), Plaintiffs have no admissible evidence to prove a required element of their breach of contract claim – the loss resulting from the breach. As a result, Plaintiff's breach of express warranty claim fails as a matter of law, even if the exclusive remedy in the WLL fails its essential purpose as Plaintiffs claim.

> **E.    Plaintiffs are precluded from asserting claims or seeking damages related to alleged problems encountered by Farm Services during its use, attempted use, or desired use of the Tractors.**

Plaintiffs' claims in this case relate to alleged GPS and mechanical problems with the Tractors. SOUF #43. Plaintiffs claim that the GPS issues predominantly occurred, and certain mechanical issues also occurred, when the Tractors were used in the manure spreading application. SOUF #43-#45, and #49. But the Tractors were <u>only</u> used for manure spreading by Farm Services because Custom Chopping does not even spread manure and is not involved in that business. SOUF #7-#8 and #42. For the reasons set out below, Plaintiffs may not assert claims or seek damages related to alleged problems encountered by Farm Services during its use, attempted use, or desired use of the Tractors.

22

Farm Services has no claims against CNH related to the Tractors. Farm Services is not a party to this case. *See generally* Docket. Also, Farm Services did not enter into any agreements with CNH, Farm Credit Leasing, or Agri-Center related to the Tractors, as all such contracts were entered into by Custom Chopping. SOUF #14-#15, #22, and #33. Thus, Farm Services has no contractual privity with CNH, Farm Credit Leasing, or Agri-Center related to the Tractors. At best, Farm Services could argue that it is a third party beneficiary entitled to assert claims against CNH. However, K.S.A. § 84-2-318 only extends express and implied warranties to intended third party beneficiaries who are natural persons who may reasonably be expected to use the goods and who suffer personal, as opposed to economic, injury. *Limestone Farms, Inc. v. Deere & Co.*, 29 Kan. App. 2d 609, 614-15, 29 P.3d 457, 461 (2001). This case only involves alleged economic loss, not personal injury (see Dkt. #1-1 and #50), and Farm Services is not a natural person (SOUF #3-#4), so Farm Services has no valid breach of express or implied warranty claims against CNH. Farm Services also is not a "consumer" under the KCPA for the same reasons Custom Chopping is not, so Farm Services has no KCPA claim against CNH. As a result, Farm Services has no claims against CNH related to the Tractors.

Similarly, Farm Services has no valid claims against Plaintiffs related to the Tractors for which Plaintiffs could attempt to pass along liability to CNH. The uncontroverted evidence in this case establishes that Farm Services had no agreement with Custom Chopping and made no payments to Custom Chopping for use of the Tractors. SOUF #40. Thus, Farm Services could not assert a breach of contract or unjust enrichment claim against Plaintiffs because Custom Chopping allowed Farm Services to use the Tractors without any compensation. Additionally, the Lease Agreements with Farm Credit Leasing required that the Tractors "only be used in the Lessee's trade or business for legal business and commercial purposes." SOUF #16. The

23

"lessees" to the Lease Agreements were "Griffitts & Coder Custom Shopping LLC, Timothy L

Coder, Bradley Allen Griffitts ('Lessee') a(n) Kansas LLC". SOUF #14-#15. Farm Services was

not listed anywhere in the Lease Agreements. SOUF #14-#15. Therefore, the use of the

Tractors by Farm Services was in violation of the terms of the Lease Agreements between

Plaintiffs and Farm Credit Leasing. If anything, these facts support a claim by Farm Credit

Leasing against Plaintiffs for breach of the Lease Agreements.

Finally, Plaintiffs have no direct claims against CNH related to Farm Services' use,

attempted use, or desired use of the Tractors. Essential elements of Plaintiffs' warranty claims

include (i) that the loss resulted from the breach (*Chapman v. Kansas Basement & Found.*

*Repair, Inc.*, 210 P.3d 137, 2009 WL 1911750, *4 (Kan. Ct. App. July 2, 2009) (discussing

breach of express warranty)), and (ii) that the defect in the goods caused the injury sustained by

the plaintiff. (*Dieker v. Case Corp.*, 276 Kan. 141, 162, 73 P.3d 133, 146-147 (2003) (discussing

breach of implied warranty of merchantability)). Thus, both express and implied warranty

claims require loss or injury. However, any injury resulting from or loss sustained as a result of

the alleged GPS and mechanical issues during the manure spreading application was suffered

solely by Farm Services, not by Plaintiffs. Plaintiffs suffered no loss or injury from any issues

Farm Services allegedly had with the Tractors, so Plaintiffs cannot satisfy an essential element of

a breach of express or implied warranty claim and those claims fail as a matter of law.

Therefore, Plaintiffs may not assert claims or seek damages related to problems allegedly

encountered by Farm Services during its use, attempted use, or desired use of the Tractors.[3]

---

[3] If the UCC for Leases is applied in this case instead of the UCC for Sales, the analysis in
Sections (II)(C), (II)(D), and (II)(E) above does not change. *See* K.S.A. § 84-2a-214(2), (3)
instead of K.S.A. § 84-2-316(2), (3)(a); K.S.A. § 84-2a-503(1)-(3) instead of K.S.A. § 84-2-
719(1)(a)-(b); K.S.A. § 84-2a-508(4) and K.S.A. § 84-2a-519(4) instead of K.S.A. § 84-2-719(2)
and K.S.A. § 84-2-714(2); and K.S.A. § 84-2a-216 instead of K.S.A. § 84-2-318.

151944002.4

**F.    CNH has no obligations under, and is not liable to Plaintiffs for, any alleged oral extended warranty agreed to between Agri-Center and Plaintiffs.**

Plaintiffs also allege that as part of the agreement to lease the Tractors through a sale from Agri-Center, Plaintiffs required, and Lee File of Agri-Center agreed, to provide an additional extended warranty to match the warranty provided by Fendt, a CNH competitor. SOUF #28.  The terms of this purported additional warranty, which Plaintiffs claim were for the life of each lease, were that Agri-Center would (1) perform all fluid and filter changes on the Tractors; (2) perform all mechanical repairs on the Tractors; and (3) provide a loaner tractor to Plaintiffs if one of Plaintiffs' Tractors went down and could not be repaired within 24 hours. SOUF #29.  Plaintiffs acknowledge that the only writing that references this purported additional warranty is the two Agri-Center Bills of Sale, which mention an extended warranty with Agri-Center performing all fluid changes during the extended warranty term, as the purported extended warranty was "all agreed to verbally."  SOUF #30.  Plaintiffs also acknowledge that they never had any discussions or email exchanges with CNH about the purported extended warranty and that they did not enter into a written agreement with CNH about the purported extended warranty.  SOUF #31.  Plaintiffs also have no knowledge of whether Farm Credit Leasing was ever advised of the purported extended warranty.  SOUF #32.

It is unclear whether Plaintiffs allege that CNH breached the purported oral extended warranty referenced above.  Regardless, CNH is entitled to a summary judgment ruling that it has no obligations or liability under the purported oral extended warranty.  First, the undisputed facts above make clear that this purported oral extended warranty was between Custom Chopping on one hand and Agri-Center on the other, as CNH was not a party to it.  SOUF #28-#32.  Thus, obligations and liability under this purported oral extended warranty, if any, lie with Agri-Center, not CNH.  Second, the WLL, which Custom Chopping signed for each Tractor,

25

explicitly states that it is the entire warranty being provided by CNH on the Tractors and that CNH makes no other representations or warranties, expressed or implied, related to the Tractors. SOUF #33-#34. Therefore, CNH specifically disclaimed any other purported warranties. For these reasons, CNH is entitled to a summary judgment ruling that it has no obligations or liability under the purported oral extended warranty.

## III.   CONCLUSION

For the reasons set out above, there are no genuine issues of material fact that preclude the entry of summary judgment in CNH's favor in this case. Therefore, CNH respectfully requests that its Motion for Summary Judgment be granted and that summary judgment be entered in its favor on each of Plaintiffs' claims in this case.

Respectfully submitted,

*/s/ Patrick A. Edwards*
Patrick A. Edwards, KS #24553
STINSON LLP
1625 N. Waterfront Pkwy, Suite 300
Wichita, KS 67206-6620
Phone: (316) 268-7938; Fax: (316) 268-9792
patrick.edwards@stinson.com
*Counsel for Defendant CNH Industrial America LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, a true and correct copy of the foregoing document was filed electronically with the Court and served by email upon the following opposing counsel:

Diane L. Bellquist at dbellquist@josephhollander.com
Anne M. Kindling at akindling@josephhollander.com
JOSEPH, HOLLANDER & CRAFT, LLC
*Attorneys for Plaintiffs*

*/s/ Patrick A. Edwards*

151944002.4